UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

| | | |
|---|---|---|
| KENNETH KOOCK and CRISTINE KOOCK, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 8:09-CV-00609-T-17EAJ TAMPA DIVISION |
| SUGAR & FELSENTHAL LLP, f/k/a SUGAR, FRIEDBERG & FELSENTHAL LLP, and JOHN DOE 1 – 10, | ) ) ) ) | |
| Defendants. | ) ) | |

## OPPOSITION TO DEFENDANTS' MOTION TO STAY DISCOVERY

This Court should deny the Defendants' July 14, 2009 "Motion to Stay Discovery" and order the Defendants to immediately cooperate with all discovery obligations required by the Rules, including their mandatory initial Rule 26(a)(1)(A) disclosures.

## OVERVEIW OF OPPOSITION

The Defendants argue that a discovery stay is justified for two reasons: because it would "potentially save huge amounts of time and effort from being needlessly spent by both the Court and the parties, all without creating prejudice to either party"; and because it "is required by the applicable federal statutes that govern securities-related class actions." The Defendants' assertions are factually and legally incorrect.

The Defendants have refused to participate with even the minimal mandatory disclosures required by Fed.R.Civ.P. 26(a)(1)(A) and Middle District Local Rule 3.05(d). Their refusal to cooperate with this required initial discovery is entirely unwarranted and is a telling indication of Defendants' attitude towards broader discovery issues. The Federal Rules do not provide for an

automatic discovery stay of discovery while a motion to dismiss is pending, and they do not allow a party to engage in "self-help" by refusing mandatory Rule-based disclosures before a stay Order is obtained.  The Defendants should not be rewarded for delay tactics that flout the express requirements of Rule 26(a)(1)(A).

Courts should conduct a "preliminary peek" at the merits of a motion to dismiss when the motion is the basis for a separate application for a stay of discovery, and such requests are disfavored.  Feldman v. Flood, 176 F.R.D. 651, 652 (M.D. Fla. 1997).  When the Court takes a preliminary look at the Defendants' motion to dismiss here, it will see that the Defendants' arguments are based exclusively on challenges to personal jurisdiction and venue.[1]  Even if the Court were to find that jurisdiction is lacking or venue is improper, this case would simply be moved or refiled elsewhere.  When a motion to dismiss will not end the dispute and discovery will take place sooner or later, there is no good reason to delay it.  Id.

The Defendants' "federal securities law" arguments are disingenuous and off-target.  The Plaintiffs' lawsuit involves state law, tort-based claims only.   Those state law claims are grounded in traditional malpractice, and they are asserted against the lawyers who prepared faulty offering documents, and not against the issuer of the defective investments.   The Defendants' pending motion to dismiss raises no federal securities law defense, but even if it did, the plan language of the federal Private Securities Litigation Reform Act's (PSLRA) stay provisions make it clear that the PSLRA applies only to claims asserted under the 1934 Securities Exchange Act.  15 U.S.C. §78u-4.  When state law claims are in federal court based on diversity jurisdiction, as is the case here, the PSLRA does not apply.  Hillis v. Heineman, 2009

---

[1] See Dkt. 13.

WL 798872 (D. Ariz.. 2009). In any event, this case does not involve "covered securities" as required by SLUSA.

## BACKGROUND FACTS RELEVANT TO STAY MOTION

The Plaintiffs' state law claims against the Sugar & Felsenthal law firm (fka Sugar Friedberg & Felsenthal) and "John Doe" Defendants 1-10 arise out of the Defendants' negligent preparation of Private Placement Memoranda (PPMs) that omitted material information about Ponzi scheme operator Howard Waxenberg and Waxenberg's hedge fund enterprise. *See* Dkt. 11. Waxenberg committed suicide following discovery of his scheme.[2]

Paragraph 14 of the Amended Complaint explains that the "John Doe" defendants were the lawyers involved in the preparation of Waxenberg's PPMs and that their identity will be learned through discovery. Ironically, any discovery relating to the proper identity of the parties in the lawsuit has been frustrated at the outset of the case by the Defendants' stay motion.

Among the Plaintiffs' allegations are: the Defendants prepared the PPMs that were used to sell bogus investments to the Plaintiffs (Dkt. 11 at ¶10); the investment funds were unregistered (¶28); the Defendants could reasonably expect to be sued in Florida for having prepared PPM documents for a Florida-based enterprise (¶17); the investments "were not covered securities as defined in the federal securities laws" (¶29); and neither Waxenberg nor his entities were registered as required by law (¶¶44-45).

The Plaintiffs' two counts are exclusively grounded in state law; for "Negligence" and "Negligent Misrepresentation by Omission."[3] No federal securities law theories are asserted, and

---

[2] Paragraph ¶1 of the Amended Complaint states that Waxenberg committed suicide. The Defendants' reference to Waxenberg as a "non-party (stay motion at p. 1) is perplexing. The Court should not be left with the false impression that the Plaintiffs could have sued Waxenberg, but elected not to.

[3] Dkt. 11 at pp. 11-12.

no claim is made against any securities issuer. The Court's jurisdiction is based on diversity. Dkt. 11 at ¶15. Exhibit 1 to the Amended Complaint, a Waxenberg PPM, states in capital letters on page ii that the Waxenberg investments were exempt and non-registered. That PPM also identifies the principal office of the investment fund and its manager (Waxenberg) as being located in Bradenton, Florida. Id.

**LEGAL MEMORANDUM IN SUPPORT OF OPPOSITION**

The Federal Rules to not provide for a stay while a motion to dismiss is pending. For that reason, the party seeking a discovery stay "bears the burden of showing good cause and reasonableness." Feldman v. Flood, 176 F.R.D. 651, 652 (M.D. Fla. 1997). As explained by the Middle District of Florida:

> Such motions are not favored because when discovery is delayed or prolonged it can create case management problems which impede the Court's responsibility to expedite discovery and cause unnecessary litigation expenses and problems.

Id. at 652, citations omitted.

I.    **THE COURT SHOULD NOT ALLOW A STAY.**

A.    **The Court should take a "preliminary peek" at the merits of the pending motion to dismiss, and it is not well-founded.**

While it is not necessary for the Court to decide the pending motion to dismiss before deciding the separate stay motion, "it is necessary for the Court to 'take a preliminary peek' at the merits of the motion to dismiss to see if it appears to be clearly meritorious and truly case dispositive." Feldman, *supra* at 652-53. The Defendants fail to satisfy either prong of the test set forth in Feldman. Their motion to dismiss is not "clearly meritorious," nor is it truly "case dispositive." Even if the motion is granted, this dispute will merely be delayed, not ended.

i)      **The motion to dismiss is not "clearly meritorious."**

The Plaintiffs have vigorously challenged the motion to dismiss.  While a rehash of the Plaintiffs' June 9, 2009 arguments in opposition to the motion to dismiss is not appropriate, when the Court conducts its "preliminary peek" at the motion to dismiss and the Plaintiffs' opposition papers, the Court will see that:  i) the Defendants deliberately directed their written legal services agreement to Waxenberg in Florida; ii) the Defendants' subsequently rendered legal services to Waxenberg's Florida-based enterprise, including preparation of a PPM that lists the principal place of business for both Waxenberg's enterprise and its Manager (Waxenberg himself) in Bradenton, Florida; and iii) during the time the Defendants represented Waxenberg, they regularly represented a number of other Florida clients.  *See* Dkt. 21 (Opposition to motion to dismiss); Dtk. 11, Exhibit 1 thereto (PPM, p. ii, listing the "principal office of the Company and the Manager" as Bradenton, Florida); Dkt. 16, Exh. 1 thereto (May 8, 2003 "Engagement Agreement" addressed to Waxenberg in Bradenton); Dkt. 15, ¶¶11-12 (Affidavit by Managing Partner Richard Sugar of Defendant law firm; firm has consistently represented other Florida clients from 2002 up through 2009).

It is not unreasonable for the Defendants, on these facts, to reasonably expect that they might commit a tortious act within the range of Florida's long-arm statute and subsequently be sued in Florida.  Their motion to dismiss, the sole reason for their stay application, should be denied, as should their separate request for an unwarranted discovery delay.

ii)     **The motion is not "truly case dispositive."**

The motion to dismiss, even if granted, will not end this dispute; the litigation will simply be conducted elsewhere.  The motion to dismiss before the Court challenges this Court's jurisdiction and venue, only.  It seeks, as an alternative to dismissal, a transfer of the dispute to a

court in Illinois. *See* Dkt. 13. When the Court conducts its "preliminary peek" at the merits of the motion, the Court will most likely ultimately conclude that the motion to dismiss should be denied. But even if the motion to dismiss or transfer is granted, the Plaintiffs will simply refile their claims elsewhere or continue their pending litigation in another jurisdiction. The motion to dismiss is not "truly case dispositive" and a discovery stay will simply delay justice.

**B.     Discovery should not stayed where the litigation will continue elsewhere.**

When a case will continue even after the resolution of a potentially dispositive motion, it is inappropriate to stay discovery. Feldman, *supra*. In Feldman, a Middle District of Florida judge agreed with a plaintiff's argument that discovery should not be stayed where a motion to dismiss was pending because even if the motion were granted, the plaintiff could still file an amended complaint, thus continuing the disputed discovery issue. 176 F.R.D. at 653.

The same situation exists here. The Defendants' motion to dismiss challenges only jurisdiction and venue. Even if granted, the case will simply be moved to (or refiled in) Illinois.[4] A request to stay discovery on these facts "is rarely appropriate where resolution of the motion will not dispose of the entire case" when "many of the issues which will be the subject of discovery will be litigated eventually, if not in this Court, in the [proceedings of another jurisdiction]." Feldman at 652-653 (citations omitted). The Defendants will eventually have to deal with discovery either here or in Illinois. A stay, which is nothing more than a delaying tactic of the inevitable, is unwarranted. Feldman, *supra*.

---

[4] The Plaintiffs believe their opposition to the motion to dismiss is well-founded and that the Court should rule in their favor on the Defendants' current challenge to jurisdiction and venue.

C.   **A Discovery stay is inappropriate where the motion to dismiss is a jurisdictional challenge, which presents mixed issues of law and fact.**

The Defendants rely on Chudasama v. Mazda Morto Corp., 123 F.3d 1343 (11th Cir. 1997) for the proposition that a discovery stay should issue until their motion to dismiss is ruled upon. Chudasama, closely read, does not even support the Defendants' position.

First, at issue in Chudasama was a fraud claim arising out of automobile advertisements that was both "novel," of questionable validity" and "dubious." Id. at 1368-69. Allowing discovery to proceed while the validity of that dubious, questionable claim was a pending issue was ruled to be inappropriate. Id.

In contrast, the Plaintiffs' claims here are neither novel nor uncertain; they are predicated on the Florida Supreme Court's 2005 opinion in Cowan Liebowitz & Latman, P.C. v. Kaplan, 902 So.2d 755 (Fla. 2005).   Cowan held that attorneys who prepare securities offering documents owe a duty of proper disclosure to the investing public, not just to their clients.   The Plaintiffs' well-founded state law claims are well-founded and dovetail completely with the standard set forth in Cowan, and do not meet the "dubious" requirement of Chudasama.

Second, Chudasama was careful to distinguish between discovery stays which involve purely legal disputes, and discovery stay requests where a motion to dismiss is based on lack of personal jurisdiction, which is the situation here. 123 F.3d at 1367.  When the motion to dismiss challenges personal jurisdiction, some factual discovery is appropriate before a meaningful ruling on the motion can be made. Id. *See also*, S.K.Y. Mgt. LLC v. Greenshoe, Ltd., 2007 WL 201258 (S.D. Fla. 2007) (denying a motion to stay discovery and distinguishing Chudasama, allowing discovery to proceed on a "straightforward" case).  The Southern District of Florida's comment in the 2007 S.K.Y. case is similar to the Middle District of Florida's earlier observation

in <u>Feldman</u>: "the burden on the Defendant here to stop all discovery before its legal defenses are finally resolved is a heavy one." 2007 WL 201258 at *1.

The result is the same even if the Court considers the law in Illinois, the jurisdiction where the Defendants believe the case should be transferred. In <u>Rozny v. Marnul</u>, 250 N.E.2d 656, 660 (Ill. 1969) the Illinois Supreme Court abandoned any privity requirement in tort actions. A little more than a decade later, the Illinois Supreme Court, citing <u>Rozny</u>, confirmed that this rule extended to malpractice actions brought against attorneys by non-clients, where the "key consideration" in determining the scope of the attorney's duty "is the attorney's acting at the direction of or on behalf of the client to benefit or influence a third party." <u>Pelham v. Griesheimer</u>, 440 N.E.2d 96, 100 (Ill. 1982), citing, *inter alia*, Probert & Hendricks, *Lawyer Malpractice: Duty Relationships Beyond Contract*, 55 Notre Dame Law, 708, 728 (1980); *see also*, Annotation, "Attorney's Liability to One Other Than His Immediate Client, for Consequences of Negligence in Carrying out Legal Duties, 45 <u>A.L.R. 3d</u> 1181 (1972).[5]

When the Court conducts a "preliminary peek" at the Defendants' motion to dismiss, the Court will see that the motion heavily relies on the numerous affidavits submitted by current or former employees of the Defendants, who purported to make various factual representations to the Court relating to jurisdiction. <u>Chudasama</u> specifically anticipates that some factual discovery is appropriate in this situation even when a motion to dismiss is pending. The Defendants' mandatory Rule 26(a)(1) disclosures require them to provide the names of all individuals with information about the dispute. This may lead to the discovery additional relevant facts on

---

[5] This result is widely accepted. In addition to the law in Florida and Illinois, *see, eg.,* <u>Carello v. PricewaterhouseCoopers LLP</u>, 2002 WL 1454111 (Del. Sup. 2002) (professionals who know their statements may be relied on by third parties may be sued in negligence under state law).

jurisdiction.   The Plaintiffs should not be deprived of an opportunity to supplement their opposition papers as appropriate based on the discovery of new jurisdiction facts.

### D.      The Plaintiffs will be prejudiced by a discovery stay.

The Defendants make the unsupported assertion on page 3 of their motion that there is "no risk of spoliation of evidence" and "no potential witnesses are known to be in ill health or in any other situation that would require their testimony being taken immediately."   These assertions are entirely without merit:  until the identities of witnesses are known and the location of documents revealed, it is impossible to know what considerations are in play, including the health of the class member Plaintiffs or other proposed witnesses.

This cause of action arises out of events going back to October of 2003.[6]  The Plaintiffs seek to represent a class of investors, many of whom may be elderly and unaware of this lawsuit. None of the evidence in this case will become clearer with delay.  In fact, it is more likely that relevant evidence will be lost or forgotten.   Witness memories are likely fading with each passing day, relevant documents are potentially being lost or destroyed, and the class of investor Plaintiffs is aging; some may even be dying.

These problems will all only worsen over time, and they can only be resolved with prompt discovery.  Even the Defendants' affidavits filed in support of their motion to dismiss concede that some of the key players at the time of the events complained of have already moved on to different jobs elsewhere.  Prejudice to the Plaintiffs is real, and militates against further delay.

---

[6] Amended Complaint, Dkt. 11, ¶4.

**II.   NO FEDERAL LAW REQUIRES A STAY.   THE DEFENDANTS' "PSLRA" DEFENSE IS ENTIRELY INAPPLICABLE BECAUSE THE PLAINTIFFS' CLAIMS ARE ENTIRELY GROUNDED IN STATE LAW.**

According to the Defendants, the automatic stay provisions of the Private Securities Litigation Reform Act ("PSLRA") apply because this case is subject to the Securities Litigation Uniform Standards Act ("SLUSA"). The Defendants are wrong on both counts. The Defendants have an interest in trying to convince the Court that this attorney malpractice action is a disguised "federal securities claim" because that argument advances their federal securities law defenses. The Court should reject the Defendants' proposition, which would lead it into error. The federal securities laws do not apply to this case, which asserts only state law claims, and this case falls under neither the PSLRA nor SLUSA.

**A.   The PSLRA is limited on its face to claims made under the 1934 Securities Exchange Act, and no such claims are asserted in this lawsuit.**

The PSLRA is contained in the Securities Exchange Act of 1934, codified at 15 U.S.C. §78(a) *et seq*. The PSLRA states in its introductory paragraph that its provisions apply only "in each private action *arising under this chapter*." 15 U.S.C. §78u-4(a)(1) (emphasis added).

None of the Plaintiffs' claims are based on any federal securities laws. The PLSRA's stay provisions only apply to federal securities claims, not state law claims. Hillis v. Heineman, 2009 WL 798872 (S. Ariz. 2009). As this case involves only state law claims, the PSLRA is wholly inapplicable. Id.

**B.   The PSLRA's stay provisions do not apply to cases based on diversity jurisdiction when only state law claims are asserted.**

The PSLRA's discovery stay does not apply to state law claims where a federal court's jurisdiction is based on diversity of citizenship. Tobias Holdings, Inc. v. Bank United Corp., 177 F.Supp.2d 162, 164-65 (S.D.N.Y. 2001). That is the case here.

Tobias involved state law claims grounded in tort and contract. Those claims had separate legal cognizability and were not dependent on (or pendent to) any federal securities claims. Id. at 167-68. The PSLRA's stay provisions did not apply: the plaintiffs should not be penalized for being in a federal rather than state forum on their state claims. Id. at 168-169.

More recently, a different district court came to the same conclusion as Tobias:

> Plaintiffs argue that the PSLRA does not apply because Plaintiffs have asserted no claims under federal securities law. The Court agrees.

Hillis v. Heineman, 2009 WL 798872 at *2 (D. Ariz. 2009). Since the PSLRA's stay provision is limited to claims brought under the 1934 Securities Exchange Act, it "has no application to actions in which only state law claims are alleged." Id., citing Tobias, *supra*.

The Defendants cite Spears v. Metropolitan Life Ins., 2007 WL 146897 (N.D. Ind. 2007) in their PSLRA argument, but Spears is distinguishable. Spears was not limited to state law claims, it involved federal securities claims made under 15 U.S.C. §77q. Id. at *1. Spears is thus inapplicable here; this case asserts only state law claims so the analysis set forth in Tobias and Hillis (not Spears) applies. Since the Plaintiffs' claims are based on state law only, and are separate and distinct from federal securities fraud theories, the PSLRA does not apply.

**C.    The Defendants' "SLUSA" defense, raised for the first time in their stay motion, is inapplicable as well.**

The Defendants have filed no SLUSA-based motion to dismiss, but still argue in their stay motion that the Plaintiffs' Amended Complaint "falls squarely within SLUSA."[7] This assertion is false, as the plain language of SLUSA shows.

---

[7] *See* Dkt. 26, p. 4.

In order for SLUSA to be applicable, the Plaintiffs' lawsuit would have to allege misrepresentation or omission of a material fact in connection with the purchase or sale of a "**covered security**." 15 U.S.C. §78bb(f)(1)(A) (emphasis added).  The Amended Complaint expressly alleges that the Waxenberg investments were not "covered securities." *See* Dkt. 11 at ¶29.

A "covered security," as expressly defined in SLUSA, means only those securities which are publicly traded or are eligible for trading on a national exchange. 15 U.S.C. §78bb(f)(5)(E); 15 U.S.C. §77r(b).  Federal registration is a prerequisite for trading on a national exchange.  15 U.S.C. §77(e).  The unregistered Waxenberg investments could not be traded, so they cannot be "covered securities" under SLUSA.

The PPM the Defendants prepared is attached to the Amended Complaint as Exh. 1.  That PPM, at p. ii, states that the Waxenberg investments were expressly designed to be "exempt" from the federal securities laws and not registered. *See* Dkt. 11, Exh. 1, p. ii.  The PPM clearly stated in original bold, capital letters:   **THESE SECURITIES HAVE NOT BEEN REGISTERED WITH OR APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION**....  Id.  The Defendant firm is counsel of record on that PPM. Id. at p. 35, "Legal Matters."

Since the unregistered, exempt Waxenberg securities could not be traded on a national exchange, this lawsuit does not involve "covered securities" as expressly required by SLUSA at 15 U.S.C. §78bb(f)(1)(A).  In any event, no "covered securities" as defined in SLUSA are even tangentially involved in the litigation.  This malpractice-based tort suit is against lawyers, not any federal securities issuer, broker/dealer, or registered investment advisor.  SLUSA, like the PSLRA, is inapplicable on its face.

## **CONCLUSION**

This case is a state law malpractice tort claim against attorneys who negligently prepared offering documents for exempt, non-covered private investments. The Plaintiffs have not filed a "federal" securities case; they have raised no federal securities claims. The Defendants' pending motion to dismiss raises no federal securities defenses either.

Under the Florida Supreme Court's 2005 <u>Cowan</u> decision, attorneys who help prepare offering documents intended for the investing public are liable for material omissions in those documents, much like CPAs who prepare audited statements can anticipate that those statements will be relied on by third parties. The Defendants should not be allowed to completely block discovery simply by filing a motion, and the Federal Rules provide for no automatic stay of discovery when a motion to dismiss is pending. The Defendants' new arguments about the applicability of the PSLRA and SLUSA should be rejected. This case does not assert any claims under the 1934 Securities Act, as the PLSRA expressly requires. It does not involve claims as to "covered securities" either, as SLUSA expressly requires.

For all the reasons set forth above, the Plaintiffs respectfully request that the Court DENY the Defendants' Motion to Stay Discovery, and order the Defendants to immediately cooperate with their Rule 26(a) mandatory disclosures, and all other discovery obligations.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 16th day of July, 2009, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified below, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

William C. Guerrant, Jr., Esq.
Hill Ward Henderson
101 E. Kennedy Blvd., Suite 3700
Tampa, FL 33602
Phone: (813) 221-3900
wguerrant@hwhlaw.com
Counsel for Defendants

Paul E. Slater, Esq., *Pro Hac Vice*
Celiza P. Bragança, Esq., *Pro Hac Vice*
Matthew T. Slater, Esq., *Pro Hac Vice*
Sperling & Slater, P.C.
55 West Monroe Street, Suite 3200
Chicago, IL 60603
Phone: (312) 641-3200
cbraganca@sperling-law.com
mslater@sperling-law.com
pes@sperling-law.com
Counsel for Defendants

Daniel F. Konicek, Esq.
Konicek & Dillon, PC
21 W. State St.
Geneva, IL 60134
Of counsel for Defendants

By:     /s/ Guy M. Burns
Guy M. Burns
guyb@jpfirm.com
Florida Bar No. 0160901
Jonathan S. Coleman
jonathanc@jpfirm.com
Florida Bar No. 797480
JOHNSON, POPE, BOKOR,
RUPPEL & BURNS, LLP
P.O. Box 1100
Tampa, FL 33601-1100
Telephone: (813) 225-2500
Facsimile: (813) 223-7118
Plaintiffs' Class Counsel

129677